UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
DANILO MALDONADO                                  :
                                                  :     **ORDER DISMISSING**
                              Petitioner,         :     **PETITION FOR WRIT OF**
         -against-                                :     **HABEAS CORPUS**
                                                  :
SUPERINTENDENT MICHAEL P. McGINNIS,               :     07 Civ. 2999 (AKH)
of Southport Correctional Facility,               :
                                                  :
                              Respondent.         :
                                                  :
------------------------------------------------------------- x
ALVIN K. HELLERSTEIN, U.S.D.J.:

      Petitioner Danilo Maldonado a/k/a Danillo Maldonado, currently an inmate at Southport Correctional Facility, Pine City, New York, brings this petition for habeas corpus pursuant to 28 U.S.C. §2254, alleging that he is being held in custody in violation of his constitutional rights. On March 7, 2001, petitioner was convicted in the Supreme Court of Bronx County, after a jury found him guilty of Attempted Murder in the Second Degree (three counts), (N.Y. PENAL LAW §§ 110/125.25(1) (McKinney 2008)), Criminal Possession of a Weapon in the Second Degree (three counts), (N.Y. PENAL LAW § 265.03(2) (McKinney 2008)), and various lesser offenses. On April 13, 2001 he was sentenced as a second felony offender to 25 years on two of the Attempted Murder counts, and 20 years on the third count, for an aggregate term of 70 years, to run concurrently to a 15 year term on the second-degree weapon possession count. Petitioner asserts a violation of his Fourteenth Amendment due process rights, arguing: (1) he was identified through an unduly suggestive lineup, (2) the trial court erred in not reopening his pre-trial suppression hearing, in order to elicit details of the victim's description of the perpetrator, and (3) the trial court erred in admitting evidence of victim's "negative identification."

1

**Background**

Petitioner's arrest grew out of a multiple shooting that occurred on August 7, 1999, at approximately 4:20 a.m., in the vicinity of 325 East 194th street in the Bronx. Three men were injured: Kurt Castor, Troy Miller and Franklyn Foster.

The following facts emerged from the testimony at trial: After an argument involving petitioner and his two friends, Jesus Melendez and Fernando Santiago, against Kurt Castor, Troy Miller and Franklyn Foster, petitioner fired approximately nine rounds into the car in which Castor, Miller and Foster were sitting. During the shooting, Miller survived a gunshot wound in the chest, while Castor was wounded when the bullet grazed his left temple; Foster was shot in the arm.

Later that afternoon, Detective Dolan visited Miller in the hospital, where Miller described the shooter as a Hispanic male, 5'6"– 5'7", 130–140 lbs., light mustache, wearing wire framed glasses, jeans, a baseball jersey, baseball hat and a "doo-rag" (a bandana wrapped around the head).

The following day, August 8, Miller viewed a lineup in which petitioner was not present, and Miller did not identify anyone among the people that were presented to resemble the accused. On August 23, the two other witnesses, Castor and Forster also viewed a lineup that did not include petitioner, and neither witness identified anyone in that lineup. Castor and Foster were then shown a binder containing pictures of Hispanic men, and Foster identified petitioner's photograph. Petitioner was arrested on August 26, 1999.

On August 28, Detective Dolan conducted another lineup, where both Foster and Miller separately identified petitioner. The lineup contained people of similar age, appearance and

2

dress to petitioner; one appeared to be African-American; three were of Hispanic appearance, and petitioner also appeared to be of Hispanic appearance.

## Prior Proceedings and Procedural History

On September 13, 1999, a Grand Jury of Bronx County indicted petitioner of acting in concert with Fernando Santiago and another, and committing three counts of Attempted Murder in the Second Degree (N.Y. PENAL LAW §§ 110/125.25(1) (McKinney 2008)), three counts of Criminal Possession of a Weapon in the Second Degree (N.Y. PENAL LAW § 265.03(2) (McKinney 2008)), and various lesser offenses.

At the close of the pre-trial hearing, following Detective Dolan's testimony about the lineup, petitioner's counsel moved to suppress the lineup identification in which petitioner was identified on the ground that it was unduly suggestive. The court denied the motion, and a motion for an evidentiary hearing. The court ruled that nothing would be accomplished by an evidentiary hearing for the "identification characteristics" used to arrange the lineup. The lineup followed, not from any verbal descriptions, but was based on the witness' visual identification of petitioner from a photograph, following that witness' inability to make an identification in previous lineups which did not include petitioner.

At trial, during Miller's cross examination, the prosecutor requested to be allowed to elicit a "non-identification," that Miller, viewing a prior line-up in which petitioner was not present, had not identified anyone. The court initially denied the request, See People v. Wilder, 712 N.E.2d 652, 654 (N.Y. 1999) (quoting People v. Bolden, 445 N.E.2d 198 (N.Y. 1982)), but then allowed it to rebut the defense counsel's argument that the witness's testimony was unreliable due to his use of drugs and alcohol on the evening of the crime. The court ruled that

3

the prosecution could present the negative identification in order to make the "narrow" argument that the witness was capable of discerning between people of similar appearances.

On March 7, 2001, the jury found petitioner guilty of three counts of Attempted Murder in the Second Degree and one count of Criminal Possession of a Weapon in the Second Degree. On April 13, 2002, petitioner was sentenced to determinate terms of 25 years on two of the attempted murder convictions and 20 years for the third conviction, to run consecutively, and a concurrent term of 15 years on the weapons possession conviction.  The Appellate Division, First Department affirmed, holding that: the lineup was not unduly suggestive, that the trial court did not err in refusing to reopen the pre-trial hearing to elicit testimony regarding the victim's description of the perpetrator, and that the trial court did not err in admitting the negative identification evidence.  People v. Maldonado, 782 N.Y.S.2d 455 (N.Y. App. Div., 1st Dep't. 2004).  Leave to appeal to the New York Court of Appeals was denied on December 28, 2004. People v. Maldonado, 824 N.E.2d 59 (N.Y. 2004).

Petitioner moved pro se in the Supreme Court, Bronx County, pursuant to N.Y. CRIM. PROC. LAW §440.20 (McKinney 2005), to vacate his sentence. His motion was denied on April 11, 2006, and leave to renew and reargue this motion was also denied. The Appellate Division denied leave to appeal on December 21, 2006.

His judicial remedies in the New York state courts having been exhausted, petitioner filed in this court for a writ of habeas corpus. He argued again, 1) the lineup was unduly suggestive, and 2) the court erred in admitting negative identification evidence.

## Discussion

Persons in state custody resulting from a conviction in a state court may petition for federal habeas corpus relief on the ground that their custody is "in violation of the Constitution

or laws or treaties of the United States." 28 U.S.C. §2254(a). The application cannot be granted unless the petitioner has exhausted all available state court remedies, or the state court remedies are absent or ineffective. 28 U.S.C. § 2254(b)(1). The court may deny a petition on the merits regardless of whether the state remedies have been exhausted. 28 U.S.C. §2254(b)(2). The court cannot grant the writ where the state court adjudicated the claim on its merits unless that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable interpretation of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d)(1)-(2). The court must also presume that the state court correctly determined factual issues unless the applicant rebuts the presumption with clear and convincing evidence. 28 U.S.C. §2254(e)(1).

### A. Petitioner's Unduly Suggestive Lineup Claim

Petitioner claims the lineup in which he was identified was unduly suggestive, violating his Fourteenth Amendment due process rights. He claims that because he wore distinctive clothing, had a lighter skin tone, and was shorter than the other lineup participants, the witness was induced to identify him as the accused.

In order to find a lineup constitutionally defective, two factors must be determined: 1) the pretrial identification must be unduly suggestive, Raheem v. Kelly, 257 F.3d 122, 133 (2d Cir. 2001), cert. denied, Donnelly v. Raheem, 534 U.S. 1118 (2002). and 2) under the totality of the circumstances, there must have been a "very substantial likelihood of irreparable misidentification." Manson v. Brathwaite , 432 U.S. 98, 116 (1977); see also United States v. Bautista, 23 F.3d 726, 729 (2d Cir. 1994) ("We will exclude a pre-trial identification only if it

was *both* produced through an unnecessarily suggestive procedure *and* unreliable.") (emphasis in original).

The Second Circuit has held: "A lineup is unduly suggestive as to a given defendant if he meets the description of the perpetrator previously given by the witness and the other lineup participants obviously do not." Raheem, 257 F.3d at 133; see also West v. Greiner, No. 01 Civ.1267 (JG), 2004 WL 315247, * (E.D.N.Y. Feb. 12, 2004) ("The focus of the inquiry is not whether the suspect had a distinctive feature not shared by the other participants, but whether that feature matches the description provided by the witness."). If the lineup was not suggestive, the evidence "presents no due process obstacle to admissibility." Raheem, 257 F.3d at 133.

The trial and appellate courts correctly concluded that petitioner's lineup was not unduly suggestive. Although petitioner matched the description of being a light skinned Hispanic male around twenty years old, approximately five-foot six with a mustache, others in the lineup also matched this description.

Even a suggestive lineup can be constitutional, if the identification process "possesses sufficient aspects of reliability," Manson, 432 U.S. at 106. and does not rise to the level of a "very substantial likelihood of irreparable misidentification." Id. at 116. In determining the reliability of an identification, the Supreme Court has considered five factors: 1) the opportunity of the witness to view the criminal at the time of the crime; 2) the witness' degree of attention, 3) the accuracy of his prior description of the criminal, 4) the level of certainty demonstrated at the confrontation, and 5) the time between the crime and the confrontation. Id. at 114 (citing Neil v. Biggers, 409 U.S. 188, 199-200 (1972).

Here, Miller clearly observed petitioner on a well-lit street for about ten minutes at a distance of less than six feet during their confrontation and subsequent shooting, thus having

6

ample opportunity to view the perpetrator with a sufficient degree of attention. Later the same day, Miller presented a detailed description of petitioner to Detective Dolan, describing his physical attributes as well as the clothes he was wearing. Miller exhibited no doubt when he identified petitioner, and did not identify anyone when petitioner was not present. The fact that the lineup occurred three weeks after the incident is not a dispositive factor in finding the identification unreliable. Furthermore, Foster and petitioner's friend, Melendez, separately corroborated Miller's identification. Therefore, the evidence of the lineup could not be unconstitutional, as the identification "possesses sufficient aspects of reliability," and certainly does not raise a "very substantial likelihood of irreparable misidentification."

Under 28 U.S.C. §2254(d)(1), the writ cannot be granted, since the state court's decision did not result in a "decision that was based on an unreasonable determination of the facts in light of the evidence presented." The state court is presumed to be correct in the determination of a factual issue, for petitioner has not rebutted this presumption by clear and convincing evidence. See 28 U.S.C. §2254(e)(1); see also Sanford v. Burge, 334 F.Supp.2d 289, 301 (E.D.N.Y. 2004) ("findings regarding the persons depicted in the lineup are entitled to a presumption of correctness, as well as . . . implicit finding[s] regarding the photographs used in the array.").

Therefore habeas relief on the claim that petitioner's lineup was unduly suggestive, and thus violated his Fourteenth Amendment right to due process, is denied.

### B. Petitioner's Claim That the Court Erred in not Reopening the Suppression Hearing to Elicit Details of the Victim's Description of the Perpetrator.

Petitioner claims that the state trial court erred in not reopening the suppression hearing in order to question Detective Dolan about the description of the perpetrator told to him by Troy

7

Miller. (Miller had survived a gunshot wound that he said had been inflicted by petitioner). For the reasons stated below, petitioner's claim is rejected.

"Evidentiary rulings by the state trial court are generally a matter of state law and do not automatically rise to the level of constitutional error sufficient to warrant habeas relief." Brooks v. Artuz, 97 Civ. 3300, 2000 WL 1532918, at *6 (S.D.N.Y. Oct. 17, 2000) (citing Rosario v. Kuhlman, 839 F.2d 918, 924 (2d Cir. 1988); Taylor v. Curry, 708 F.2d 886, 891 (2d. Cir. 1988)). Nevertheless, state court evidentiary rulings may constitute a constitutional violation, cognizable of habeas review, if three prongs can be shown: 1) the state court violated a state evidentiary rule; 2) the court's error violated an identifiable constitutional right, and 3) the erroneous admission of evidence deprived the defendant of a fundamentally fair trial. E.g. Jamison v. Grier, No. 01 Civ. 6678 (AGS) (AJP), 2002 WL 100642, at *15-16 (S.D.N.Y. Jan. 15, 2002) (discussing the habeas review standard for claims of errors in state evidentiary rulings, and finding that a claim that a court erroneously admitted photographic evidence did not meet that standard.).

The decision whether or not to reopen a suppression hearing is "clearly a matter of state law," Tirado v. Walsh, 168 F.Supp.2d 162, 170 (S.D.N.Y. 2001), as to which the court has discretion. See e.g. People v. Ramirez, 843 N.Y.S.2d 280 (N.Y. App. Div., 1st Dep't 2007); People v. Tirado, 698 N.Y.S.2d 484 (N.Y. App. Div., 1st Dep't 1999). The court did not abuse its discretion when it refused to reopen the pre-trial hearing, since, as the appellate court correctly noted, petitioner's counsel had failed to advance a good reason why it should be reopened. See People v. George, 492 N.E.2d 767, 768 (N.Y. 1986) (cited by Maldonado, 782 N.Y.S.2d at 455). After the court had seen photographs of the lineup, the court reasonably concluded that the lineup was fair and that another hearing would be wasteful. The trial court

did not abuse its discretion by denying counsel's request. No state evidentiary rule was violated, and no identifiable constitutional right was violated. See Jamison, 2002 WL 100642, at *15 (citing Jones v. Stinson, 94 F.Supp.2d 370, 391-392 (E.D.N.Y. 2000)) ("Once the habeas court has found that the state court ruling was not erroneous under state law, there is no need to apply a constitutional analysis.").

Petitioner also cannot show that the alleged error deprived him of a fundamentally fair trial. In order to show that the trial was fundamentally unfair, petitioner must show that had the court allowed the hearing to be reopened, the result would have barred evidence the admissibility of which caused petitioner's ultimate conviction. See Jamison, 2002 WL 100642, at *16 (quoting Taylor v. Curry, 708 F.2d 886, 891 (2d Cir. 1983)) ("The test for fundamental fairness is whether the excluded evidence evaluated in the context of the entire record, created a reasonable doubt that did not otherwise exist") (internal quotations omitted).

The alleged error did not affect the admissibility of the lineup much less the outcome of the trial. Petitioner's counsel had the opportunity to elicit all the information he desired regarding the victim's description during cross examination at trial, and could have argued on any such additional facts (if, indeed there were any) that the lineup was suggestive. See Sanford, 334 F.Supp.2d at 302 ("Even assuming that the state court should have granted counsel's request to question the identifying witness at the Wade hearing, his due process rights were not violated since he was given an opportunity to do so at trial."); see also id. (citing Dunnigan v. Keane, 137 F.3d 117, 129 (2d Cir. 1998)) ("Under due process clause, reliability of identification testimony can be sufficiently challenged through cross-examination and summation at trial rather than at Wade hearings.").

Since petitioner does not show that the trial court violated a state evidentiary rule or an identifiable constitutional right, and petitioner was not denied a fundamentally fair trial, his claim regarding the reopening of the suppression hearing does not warrant the writ of habeas corpus. Accordingly, this claim is denied.

### C. Petitioner's Claim That the Trial Court Erred in Admitting "Negative Identification"

Petitioner claims that the trial court erred when it admitted Miller's negative identification - testimony that he did not identify anyone in the lineup in which petitioner was not present. Petitioner claims his Fourteenth Amendment right to a fair trial was violated.

As in petitioner's previous claim, this also is a claimed violation of a state evidentiary rule, which, as we have already discussed, will rise to the level of a cognizable habeas review, only if petitioner can show that: 1) the state court violated a state evidentiary rule, 2) the court's error violated an identifiable constitutional right, and 3) the erroneous admission of evidence deprived the defendant of a fundamentally fair trial.

Under New York law, negative identification may be admitted in "certain circumstances . . . notably where the reliability of an eyewitness identification is at issue." People v. Wilder, 712 N.E.2d 652, 654 (N.Y. 1999) (quoting People v. Bolden, 445 N.E.2d 198 (N.Y. 1982)). Here, petitioner's counsel indicated that Miller's use of marijuana and alcohol affected his perception, and therefore his identification should be unreliable. It was for this reason that the trial court allowed the prosecutor to admit evidence of Miller's negative identification, to show that he indeed was able to distinguish between the perpetrator and similarly looking lineup fillers. Wilder clearly affords the trial court the discretion to decide whether the "probative value is

10

outweighed by any prejudicial impact on the defendant." <u>Wilder</u>, 712 N.E.2d at 655.  The trial court rulings were consistent with state law.

Petitioner also fails the "fundamental fairness" due process prong.  "For the erroneous admission of evidence to amount to a denial of due process, the item must have been sufficiently material to provide a basis for conviction or to remove a reasonable doubt that would have existed on the record without it." <u>Dunnigan</u>, 137 F.3d at 125. Besides Miller's negative identification, there was an actual lineup identification, as well as Melendez's testimony that petitioner was the suspect; both of these factors were each sufficient evidence to convict petitioner even without the negative identification.  Admission of the negative identification did not deprive petitioner of a fundamentally fair trial. <u>See</u> e.g. <u>Randolf v. Warden, Clinton Corr. Facility</u>, No. 04 Civ. 6126 (SAS), 2005 WL 2861606, at * 4 (S.D.N.Y. Nov. 1, 2005) ("When [victim] was shown a photo array which included [petitioner's] photograph, he identified [petitioner] as the person who shot him.  The omission of the negative identification evidence would not have created a reasonable doubt that would have nullified or diminished the effect of [victim's] identification.").  Accordingly, petitioner's claim that the court erred in admitting the negative identification does not rise to the level of a constitutional violation in order to merit the writ of habeas corpus.

## Conclusion

Petitioner's writ of habeas corpus is denied, since he has failed to show that the state courts ruled in violation of the Constitution or laws of the United States. <u>See</u> 28 U.S.C. §2254(a). Accordingly, petitioner's petition for a writ of habeas corpus is denied.  Further, I deny a certificate of appealability, for there has not been a substantial showing of the denial of a

constitutional right. Lozada v. United States, 107 F.3d 1011, 1016-17 (2d Cir. 1997), abrogated on other grounds by United States v. Perez, 129 F.3d 255, 259-60 (2d Cir. 1997).

The Clerk shall mark the case closed.

SO ORDERED.

Dated:    New York, New York
          June 27, 2008

ALVIN K. HELLERSTEIN
United States District Judge